**WO**                                                                                                       JDN

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Steven Parker,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Adu-Tutu, et al.,<br><br>　　　　Defendants. | No. CV 10-2747-PHX-GMS (ECV)<br><br>**ORDER** |

Plaintiff Mark Steven Parker brought this civil rights action under 42 U.S.C. § 1983 against Dr. Rowe, an Arizona Department of Corrections (ADC) Facility Health Administrator (Doc. 26).[1] Before the Court are Defendant's Motion for Summary Judgment (Doc. 129) and Plaintiff's Motion to Put Court on Notice of Due Process Violations (Doc. 161).

The Court will grant Defendant's motion, deny Plaintiff's motion as moot, and terminate the action.

**I.    Background**

Plaintiff's claims arose during his confinement at the Arizona State Prison Complex in Florence, Arizona (Doc. 26 at 1). Plaintiff alleged that Defendant was deliberately indifferent to Plaintiff's serious medical need when he repeatedly denied other physician's requests to provide Plaintiff a medically prescribed vegetarian diet for his chronic gout (id.

---

[1] Upon screening, the Court dismissed Ryan, Adu-Tutu, Phen, Chitwood, Underwood, Kenter, and John Doe Food Service Canteen Manager as Defendants (Doc. 35).

at 7, 9-11, 20; Doc. 35). Specifically, in Count II Plaintiff claimed that Defendant denied Physician Assistant (PA) Chitwood's request to prescribe Plaintiff a no-meat diet (Doc. 26). In Count III, Plaintiff alleged that Defendant denied Dr. Phen's request to prescribe Plaintiff a no-meat diet. And in Count VIII, Plaintiff claimed that Defendant repeatedly denied requests by Dr. Phen, Chitwood, and PA Underwood[2] for a vegetarian diet for chronic gout pursuant to a policy that allowed only chaplains—but not physicians—to prescribe vegetarian diets (id.).[3]

Defendant moves for summary judgment on the grounds that he was not deliberately indifferent to Plaintiff's medical needs and he is entitled to qualified immunity (Doc. 129).

## II.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir.

---

[2] Throughout his briefing, Plaintiff's mistakenly refers to Underwood as "Thunderwood."

[3] The Court dismissed all other Counts except Count I; however, the only named Defendant in Count I was a Doe Defendant, and the Court did not direct service on the Doe Defendant (Doc. 35 at 7).

- 2 -

1995). The nonmovant need not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.    Facts**

In support of his motion, Defendant submits a separate Statement of Facts (DSOF) that is supported by his declaration and numerous attached documents, primarily medical records (Doc. 130, Ex. B & Attachs.).[4] In response, Plaintiff proffers his separate Statement of Facts (PSOF), his sworn declaration, and numerous exhibits (Doc. 157, Pl. Decl. (Doc. 157 at 1-43);[5] Doc. 157 at 44-109; Doc. 158).[6]

The parties set forth the following disputed and undisputed facts relevant to Plaintiff's claims:

Defendant states that as of September 2007, it was noted in Plaintiff's file that he has

---

[4]Defendant presents 116 paragraphs in his DSOF and 149 paragraphs in his declaration (Doc. 130 & Ex B). Many of these factual assertions and averments concern irrelevant issues, such as ADC medical request procedures and medical care unrelated to Plaintiff's gout. Plaintiff responded with numerous assertions and documents that likewise concern irrelevant issues (see Doc. 157 & Exs.). The Court has limited its review to the factual assertions specific to the claims in Counts II, III, and VIII.

[5]Additional citation refers to the document and page number in the Court's Case Management/Electronic Case Filing system.

[6]The Court failed to docket PSOF separately; PSOF is found within Doc. 158 at pages 58-74.

1 a history of gout (Doc. 130, Ex. B, Def. Decl. ¶ 13 (in part)).[7] The American Medical Association recommends that people with gout eat a low-fat diet that is low in protein and high in complex carbohydrates (DSOF ¶ 27).

In April 2008, Plaintiff saw Dr. Whitney, who prescribed Allopurinol for Plaintiff's gout (Doc. 130, Ex. B., Def. Decl. ¶ 19). In September 2008, Plaintiff saw Dr. Bruce Kanter, who prescribed Colchicine for gout attacks (id. ¶ 22).

A year later, on September 29, 2009, Plaintiff saw medical staff, who noted that Plaintiff was prescribed Colchicine and Allopurine for his gout, and Nurse Brittain requested a vegetarian diet (id. ¶ 25). The next day, administrators informed Brittain that a vegetarian diet can be ordered only by a Chaplain, and Brittain informed Plaintiff of this (id. ¶ 26).[8]

On February 19, 2010, Plaintiff saw PA Underwood, who recommended that Plaintiff be placed on a low-purine diet for one year (id. ¶ 31). The next month, on March 4, 2010, Dr. Coons reviewed the request and noted in Plaintiff's medical record that Plaintiff did not need a special diet (id. ¶ 32).

In April 2010, Plaintiff requested a vegetarian diet but was advised that a vegetarian diet is only given by a Chaplain (id. ¶ 36).

On May 3, 2010, Plaintiff saw PA Chitwood and stated that he was worried about eating meat and wanted a low-purine diet (id. ¶ 42). Plaintiff reported gout flare-ups approximately once a month with pain in his feet (id.). Chitwood requested a dietary consult and noted that a controlled-protein diet was adequate for Plaintiff's medical needs because it does not contain any foods high in purine (id.).

---

[7] Plaintiff objects to ¶ 13 of Defendant's declaration; however, his objection concerns a portion of the paragraph not considered here (Doc. 157, Pl. Decl. ¶ 7). The objection is overruled as moot.

[8] Plaintiff asserts that Defendant's declaration statements at ¶¶ 25 and 26 are not supported by the cited material (Doc. 157, Pl. Decl. ¶ 30). Upon review of the attached medical records for September 29 and 30, 2009, the Court finds that Defendant's statements are supported, and to the extent Plaintiff objects to these statements, his objections are overruled (Doc. 130-3 at 3-4 (Bates Nos. 133-134)).

- 4 -

On May 14, 2010, Plaintiff saw Dr. Phan about his gout, at which time Plaintiff again requested a low-protein diet (id. ¶ 45).

After submitting numerous HNRs requesting treatment for gout and complaining about meat in his diet, medical staff informed Plaintiff that they did not have a no-meat diet and instructed him to remove the meat from his plate (id. ¶ 49).

On June 10, 2010, Plaintiff saw Dr. Phan (id. ¶ 51).[9] Dr. Phan discussed a low-protein diet and reviewed foods high in purines (id.). Dr. Phan told Plaintiff to avoid turkey, and they discussed the possibility of a no-meat diet (id.). Dr. Phan told Plaintiff that if it was something he could do, he would consider writing a prescription for the diet (id.). Dr. Phan noted that Plaintiff had lost 49 pounds since entering ADC, and Dr. Phan requested a low-protein diet with "two resources" a day and weekly weight monitoring (id.). Plaintiff states that, because Defendant denied Dr. Phan's diet request for a no-meat, low-purine diet, Dr. Phan ordered two "resources protein drinks" to be added to his daily diet (Doc. 157, Pl. Decl. ¶ 14; Doc. 158, PSOF ¶ 13). Plaintiff states that, unfortunately, these resource drinks aggravated Plaintiff's gout and contributed to high levels of uric acid build up (id.).

On October 26, 2010, Plaintiff saw PA Chitwood to discuss his diet and his gout flare ups (Doc. 130, Ex. B, Def. Decl. ¶ 61). Chitwood advised Plaintiff that medical does not issue a vegan diet and that his prescribed controlled-protein diet with two resources was just one small part of his gout treatment (id.). Chitwood told him that if a special no-meat diet was possible, they would consider ordering the diet (id.). Chitwood discussed Plaintiff's diet with Dr. Baird, who directed her to send a request for approval of a no-meat, two resources diet (id.).

On November 9, 2010, Defendant denied Plaintiff's request for a no-meat, low purine diet on the ground that the general-population diet was acceptable for a gout patient and there was no medical evidence to indicate otherwise (id. ¶ 64; Doc. 157, Pl. Decl. ¶ 9).

---

[9] Plaintiff's objection to ¶ 51 of Defendant's Declaration is overruled because it relates to a portion of ¶ 51 that the Court does not consider (Doc. 157, Pl. Decl. ¶ 35).

Plaintiff reported extreme pain in his limbs and/or gout attacks on November 24 and 26, December 6 and 29, 2010, and January 20, 25, and 28, 2011 (Doc. 130, Def. Decl. ¶¶ 69, 70, 72, 76-77, 83, 85-86, 89-90).

On January 28, 2011, medical staff learned that the Chaplain had approved a vegetarian religious diet for Plaintiff; the controlled protein diet with two resources was discontinued and replaced with the religious diet (id. ¶ 91).

In HNRs submitted March 4, 7, 14, and 25, 2011, Plaintiff wrote that he was served a regular diet with processed meats and was suffering gout attacks as a result (id. ¶¶ 93-95, 97). On March 29, 2011, Plaintiff was seen by medical staff, and he requested a vegetarian diet for his gout (id. ¶ 99). Nurse Valore noted that Plaintiff's request for a vegan diet had already been denied and there was no medical need for a vegetarian diet (id. ¶ 99).[10]

On March 30, 2011, Plaintiff submitted an HNR explaining that he had a medical diet prescribed on June 10, 2010 (id. ¶ 100). In response, medical staff informed Plaintiff there was no controlled-protein diet at the Rincon unit and he was getting what was available (id.). Plaintiff submitted a similar HNR on April 4, 2011, trying to explain the diet he should be provided, and he received the same response from medical (id. ¶ 10).

In April 2011, Plaintiff again requested a no-meat diet (id. ¶¶ 103, 105). On April 22, 2011, Plaintiff saw medical staff and was again informed that there is not a no-meat medical diet and he had no medical need for such a diet (id. ¶ 106).

Plaintiff reported gout attacks on May 23, 26, and 29, 2011, and he indicated that he was being given a meat diet (id. ¶¶ 108-109).

On July 6, 2011, Plaintiff saw Dr. Lewis, who noted that the no-protein diet had been denied by Defendant in November 2010 (id. ¶116). Defendant states that Dr. Lewis did not pursue a diet for gout because it was not available and was not medically indicated (id.).

---

[10] And Neither DSOF nor Defendant's declaration explain why Plaintiff was no longer receiving the religious vegetarian diet that had been approved on January 28, 2011 (see Doc. 130, Ex. B, Def. Decl. ¶ 91).

- 6 -

Defendant states that on October 5, 2011, the ADC Director responded to Plaintiff's grievance appeal by granting his request for a vegan diet, and Plaintiff began receiving a vegan diet on November 2, 2011 (DSOF ¶¶ 97-98).

In December 2011 and early January 2012, Plaintiff reported gout pain and a gout attack affecting his foot, and lab results showed that his uric-acid levels were up (Doc. 130, Ex. B, Def. Decl. ¶¶ 125, 128-129).

On or about January 19, 2012, a prison doctor, Dr. De Guzman, had a telemed consultation with Dr. Jeffrey R. Lissee about Plaintiff's gout condition (id.130; Doc. 130-3 at 12 (Bates No. 208)). Plaintiff was not present at the consultation (id.). Dr. Lissee, the Chief of Rheumatology and Immunology at the University of Arizona Health Sciences Center, recommended an increase in Allopurinol (id.).

Defendant states that on January 20, 2012, Plaintiff's vegan diet was discontinued due to his refusal to take vegan diet tray (DSOF ¶ 99). Plaintiff states that he did not refuse to take a vegan diet tray; rather, after Plaintiff complained that food service was not providing the prescribed vegan menu, the food service manager falsely accused Plaintiff of taking a regular tray (Doc. 157, Pl. Decl. ¶ 41).

On March 15, 2012, Plaintiff saw Dr. Lissee via telemed (Doc. 130, Ex. B, Def. Decl. ¶¶ 137-138; Doc. 130-3 at 13 (Bates No. 217)). Dr. Lissee stated that a low purine diet may decrease Plaintiff's serum uric acid although dietary manipulation alone is not adequate to decrease uric-acid levels to the desired level (id.). Dr. Lissee stated that if Plaintiff can tolerate a diet with less purines, it would include less processed meats and cheeses (id.).

Shortly after this telemed appointment, Plaintiff made requests for a no-meat, low-purine diet as recommended by the specialist (id. ¶¶ 140-141). In response, medical staff told Plaintiff that he must go to the Chaplain to get a vegan diet (id. ¶¶ 141, 143).

**IV.   Arguments**

    **A.   Defendant's Motion**

Defendant contends that Plaintiff simply presents a disagreement with Defendant over the benefits of a no-meat diet and this disagreement is insufficient to support a deliberate-

- 7 -

indifference claim (Doc. 129 at 13).  Defendant asserts that numerous treating doctors believed that consistent use of Allopurinol was the treatment necessary to decrease Plaintiff's uric-acid levels, and that Plaintiff's gout attacks were caused by his own failure to continuously take Allopurinol as prescribed (id.).  According to Defendant, Plaintiff's claim that he required a no-meat diet is not medically supported, and there is no evidence that Defendant was recklessly indifferent to Plaintiff's serious medical needs (id. at 13-14).

Defendant further contends that he is entitled to qualified immunity (id. at 14). He states that because Plaintiff was provided with appropriate treatment for his gout, it would be unclear whether Defendant's action in reviewing Plaintiff's medical diet was unlawful (id. at 15).

### B.    Plaintiff's Response[11]

Plaintiff opposes Defendant's motion and argues that Defendant fails to meet his burden on summary judgment to show the absence of a material issue of fact (Doc. 156 at 1). Plaintiff asserts that there is no dispute that he suffered from severe and painful gout and that PA's Underwood and Chitwood and Dr. Phan attempted to prescribe a no-meat diet because they believed there was potential harm to Plaintiff if he remained on the regular general-population diet that included processed meats and other foods high in purine (id. at 3-4). Plaintiff further asserts that it is undisputed that a low-purine, low-protein, and no-meat diet is the proper diet for a gout patient (id. at 4). Plaintiff maintains that it was apparent that the Eighth Amendment prohibited Defendant from depriving Plaintiff of a nutritionally adequate diet for his gout condition and that Defendant knew or should have known that failing to provide the proper diet would likely cause Plaintiff pain and suffering (id. at 5). Plaintiff states that Defendant nonetheless prevented Plaintiff form receiving a low-purine

---

[11]The Court issued a Notice, required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of the requirements under Federal Rule of Civil Procedure 56 (Doc. 131).

1    and no-meat diet and Plaintiff suffered repeated gout attacks as a result (id. at 6, 8). For this
2    reason, Plaintiff maintains that Defendant is not entitled to qualified immunity (id. at 7).[12]

3    Plaintiff argues that Defendant set in motion a policy—a policy to not provide any no-meat medical diets—that led to the deprivation of a constitutional right (id. at 6).  Plaintiff asserts that the physician and two PA's were forced to conform to this policy and deny Plaintiff a diet appropriate for his gout condition (id. at 10, 12).  Plaintiff states that Chitwood prescribed a "controlled-protein" diet; however, this diet was the same as that provided to general population (id. at 12).  Plaintiff avers that when he handed his diet card to kitchen staff, they would just yell for a regular tray (id.).  Plaintiff also states that Dr. Phan was concerned about the processed meat and advised him to not eat the meat served to him (id. at 12-13).

Plaintiff maintains that the specialist recommended that he receive a no-meat, low-purine, and low-protein diet in conjunction with an increase in Allopurinol (id.).  According to Plaintiff, Allopurinol can cause serious side effects if not taken with the proper diet, and he states that when his dose was increased, he suffered severe side-effects, including vomiting, stomach ulcers, blood in stool, abdominal pain, renal failure, headaches, and rashes (id. at 14-15).[13]

Plaintiff acknowledges that he is now on a religious diet which is better than that provided to the general population; however, it is not a medical diet, and it is high in purine and protein (id. at 15).  He contends that if he had been provided a diet low in purine and

---

[12]Plaintiff also argues that Defendant violated Arizona Revised Statute § 12-563(1)(2) (Doc. 156 at 5).  The Court did not recognize a state-law claim when it screened Plaintiff's amended pleading, and it will not consider claims raised for the first time in a summary judgment response.

[13]The parties strongly dispute whether Plaintiff was non-compliant in taking his prescribed Allopurinol and whether this, rather than his diet, contributed to Plaintiff's gout flare ups (see Doc. 129 at 9-10). Plaintiff concedes that at times he did not take Allopurinol because he was suffering gout attacks and related symptoms, and he submits evidence suggesting that Allopurinol should not be taken if the patient exhibits certain symptoms or suffers a severe reaction (see Doc. 157, Pl. Decl. ¶ 27; Doc. 158 at 34-36). The Court finds that this dispute is not material to whether Defendant improperly denied Plaintiff a no-meat diet or promulgated a policy that prevented Plaintiff from receiving a necessary medical diet.

protein and provided a much lower dosage of Allopurinol, he would not have suffered repeated gout attacks and side-effect symptoms (id. at 16-17).  Plaintiff explains that prior to entering ADC custody he consumed a no-meat, low-purine, and low-protein diet that lowered his uric acid levels enough that he was taken off Allopurinol (id. at 17).[14]

### C. Defendant's Reply

Defendant argues that Plaintiff's only remaining claim amounts to a claim for medical malpractice and that he provides nothing in response to summary judgment beyond his own objections and opinions regarding Defendant's conduct (Doc. 159 at 1-2). Defendant maintains that the medical providers that treated Plaintiff agree with Defendant's position regarding the proper diet (id. at 2). Defendant concludes that there is no medical evidence to support that Defendant was recklessly indifferent to Plaintiff's serious medical need and summary judgment should be granted (id.).

## V. Governing Standard

Under the Eighth Amendment standard, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective standard. First, a prisoner must show a "serious medical need." Jett, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. Jett, 439 F.3d at 1096. The state of mind required for deliberate indifference is subjective recklessness; however, "the standard is 'less stringent in cases

---

[14]Plaintiff sets forth a number of objections to various statements in Defendant's motion (Doc. 156 at 19-25). The objections relate to Defendant's asserted facts that are either not relevant or are addressed above.

1 involving a prisoner's medical needs . . . because the State's responsibility to provide inmates
2 with medical care ordinarily does not conflict with competing administrative concerns.'"
3 Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (quoting McGuckin, 974 F.2d at
4 1060). To show deliberate indifference, the prisoner "must show that the course of treatment
5 the doctors chose was medically unacceptable under the circumstances" and that the
6 defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health."
7 Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted). This second prong
8 is met if the prisoner demonstrates (1) a purposeful act or failure to respond to a prisoner's
9 medical need and (2) harm caused by the indifference. Id.

10 Prison officials are deliberately indifferent to a prisoner's serious medical needs if
11 they deny, delay, or intentionally interfere with medical treatment. Wood v. Housewright,
12 900 F.2d 1332, 1334 (9th Cir. 1990). But a delay in providing medical treatment does not
13 constitute an Eighth Amendment violation unless the delay was harmful. Hunt v. Dental
14 Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Shapley v. Nevada Bd. of State Prison
15 Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). And a difference of opinion as
16 to which medically acceptable course of treatment should be followed does not amount to
17 deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

18 **VI.  Analysis**

19 Defendant does not argue that Plaintiff did not have a serious medical need, and the
20 record reflects that Plaintiff was diagnosed with gout and suffered pain. The evidence
21 supports that his condition was worthy of treatment and constituted a serious medical need.
22 See McGuckin, 974 F.2d at 1059-60. The Eighth Amendment analysis therefore turns on the
23 subjective prong—whether Defendant's response to Plaintiff's serious medical need was
24 deliberately indifferent. See Jett, 439 F.3d at 1096.

25 Plaintiff claims that Defendant violates his Eighth Amendment rights by denying a
26 no-meat, low-purine diet and creating a policy that prevented medical personnel from
27 prescribing such a diet. "A supervisor may be liable for an Eighth Amendment violation if
28

- 11 -

1 he or she was made aware of the problem and failed to act or if he or she promulgated or
2 enforced a policy under which unconstitutional practices occurred." <u>Valley v. Director of</u>
3 <u>Prisons</u>, CIV S-05-310 MCE KJM P., 2008 WL 436954, at *5 (E.D.Cal. 2008), citing <u>Jett</u>,
4 439 F.3d at 1098; <u>See</u> <u>Redman v. County of San Diego</u>, 942 F .2d 1435, 1446 (9th Cir.
5 1991), <u>abrogated on other grounds by</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)
6 ("[s]upervisory liability exists . . . if supervisory officials implement a policy so deficient that
7 the policy itself is a repudiation of constitutional rights and is the moving force of a
8 constitutional violation.").

9 Defendant's own evidence reflects that medical providers who treated Plaintiff
10 considered or recommended a no-meat diet for his gout condition (Doc. 130-2 at 69 (Dr.
11 Phan's 6/10/10 med. note "discussing the possibility of a no meat diet with ADC. If this is
12 something that we can do, we will consider writing for this diet"); Doc. 130-2 at 66 & Doc.
13 130, Ex. B, Def. Decl. ¶ 61 (PA Chitwood's 10/26/10 med. note repeating Dr. Phan's note
14 about no-meat diet and indicating will discuss issue with Dr. Baird, who then directed
15 Chitwood to submit request for no-meat diet); Doc. 130-3 at 3 (Nurse Brittain's 9/29/09 med.
16 note recommending vegetarian diet)).

17 The record also supports that the treating medical providers were prohibited from
18 prescribing a no-meat diet to Plaintiff because ADC policy allows only chaplains to authorize
19 vegetarian or vegan diets (Doc. 130, Ex. B, Def. Decl. ¶ 14 ("ADC does not have a medical
20 no-meat, low-purine diet"); ¶ 26 (Nurse informed that vegetarian diet can only be ordered
21 by Chaplain); ¶ 36 (Pl. advised by medical that a no-meat diet only given by Chaplain)). In
22 his reply, Defendant does not refute that ADC policy did not allow medical to prescribe a no-
23 meat or low-purine diet, nor does he refute Plaintiff's claim that, as Medical Program
24 Manager, he helps develop ADC medical policies and created the policy that prevents
25 medical personnel from prescribing certain diets, which, in turn, prevented medical providers
26 from prescribing Plaintiff a no-meat diet for his gout (<u>see</u> Doc. 156 at 10).

27
28

Construing the evidence in Plaintiff's favor, Defendant's actions and/or the policy he promulgated prevented Plaintiff from being prescribed a medical no-meat diet. The Court must determine, however, whether that denial of a medical no-meat diet amounted to a constitutional violation.

That Plaintiff's treating medical providers may have disagreed with Defendant as to whether a no-meat diet was medically acceptable for Plaintiff does not evidence deliberate indifference. Sanchez, 891 F.2d at 242 (difference of opinion between medical providers regarding treatment does not amount to deliberate indifference). The Court relies on the evidence from the only specialist that Plaintiff saw during the relevant time, Dr. Lissee. According to Dr. Lissee, the primary treatment tool for managing Plaintiff's gout was administering the proper dosage of Allopurinol, which was to be determined with regular lab testing (Doc. 130-3 at 12-13 (Bates Nos. 208, 217)). With respect to diet, Dr. Lissee opined that Plaintiff "appeared obsessed with his diet," but that "if he desires and can tolerate a diet with less purines, this will include less processed meats and cheeses"(id. at 13 (Bates No. 217)). If Dr. Lissee, as a specialist, had recommended a vegetarian or no-meat diet, and Plaintiff continued to be denied such a diet, then there would be a triable issue of fact whether that denial was medically unacceptable. See Snow, 681 F.3d at 988-89 (finding it unreasonable for the defendants—family medicine physicians—to rely on their own non-specialized medical conclusions to continue indefinite course anti-inflammatory drugs when specialists—orthopedic surgeons—hired to consult on the case had recommended surgery). But Dr. Lissee did not recommend a no-meat diet; he merely referred to a diet with *less* processed meats.

The evidence also shows that during the period that Plaintiff was receiving a religious vegan diet—from November 2, 2011 to January 20, 2012—Plaintiff continued to suffer gout attacks and increased uric-acid levels (Doc. 130, DSOF ¶¶ 98-99, Ex. B, Def. Decl. ¶¶ 122-125, 127-129). Plaintiff argues that he has had five years of elevated uric-acid levels induced by the high-purine and high-protein diet provided to him, suggesting that the few months on

- 13 -

a no-meat diet would not reverse the damage already done (Doc. 157, Pl. Decl. ¶ 40 (Doc. 157, Pl. Decl. ¶ 40 (Doc.157 at 37-39)). But Plaintiff fails to provide any medical evidence to support that the diet provided to him—apart from these few months—was medically unacceptable for his gout condition. Even Plaintiff's evidence, the copy of a WebMD article about gout home treatment, recommends avoiding very low-calorie diets and limiting meat and seafood; it does not mention or recommend no-meat or vegetarian diets (Doc. 158 at 40).

In short, absent any medical evidence or expert testimony, and in light of Dr. Lissee's lack of emphasis on diet and failure to specifically recommend a no-meat or vegan diet, Plaintiff cannot show a genuine issue of material fact that the denial of a no-meat diet constituted deliberate indifference to his serious medical need. Accordingly, summary judgment will be granted to Defendant on Counts II, III, and VIII, and the Court need not address Defendant's qualified immunity argument or the reasonableness of a policy that prevents physicians from prescribing certain diets for medical reasons.

**VII. Plaintiff's Motion to Put Court on Notice of Due Process Violations**

In his motion, Plaintiff reports an assault, harassment, denial of access to his legal materials, and the denial of his religious diet (Doc. 161). He avers that he is unable to adequately prosecute this action in the face of these due process violations, and he asks the Court to take notice of the violations (id. at 2-3).

The Court will deny Plaintiff's Motion given that he does not request any specific relief and, to the extent that he seeks injunctive relief, he fails to make the requisite showing for any relief. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Lewis v. Casey, 518 U.S. 343, 354 (1996). Moreover, with the granting of Defendant's summary judgment motion and termination of the action, Plaintiff's motion is moot.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for Summary Judgment (Doc. 129) and Plaintiff's Motion to Put Court on Notice of Due Process Violations (Doc. 161).

(2) Defendant's Motion for Summary Judgment (Doc. 129) is **granted**.

(3) Plaintiff's Motion to Put Court on Notice of Due Process Violations (Doc. 161) is **denied as moot**.

(4) The Clerk of Court must enter judgment accordingly and terminate the action.

DATED this 2nd day of April, 2013.

*A. Murray Snow*
G. Murray Snow
United States District Judge